UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONALD V. JACOBS and ) | |
| MICHELLE A. JACOBS ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL NO. 3:06-CV-0459 |
| ) | |
| JANE A. HOULIHAN  and ) | |
| BRANDON M. JACOBS ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This cause is before the court based upon a "Notice of Petition, Verified Petition for Warrant of Removal" filed by purported Plaintiffs Donald and Michelle Jacobs ("the Jacobs") on July 24, 2006.[1] For the following reasons, this cause is REMANDED to the state court.

In their petition, the Plaintiffs seek to remove to federal court a guardianship action filed by Defendant in the present action, Jane Houlihan ("Houlihan") wherein she seeks guardianship over her adult son, Brandon Jacobs.  The Jacobs, who were non-parties to the original guardianship action, intervened by filing a counter-petition in the state suit also seeking guardianship of Brandon Jacobs. On May 11, 2006, the state court, after a hearing, entered an order granting guardianship of Brandon Jacobs to Houlihan and ordered the Jacobs to pay various attorneys fees and expenses for

---

[1]On August 11, 2006, while the court was engaged in a *sua sponte* review of its jurisdiction over this cause, the Defendants filed a Motion to Dismiss Removal Petition.  In concluding that remand is appropriate, this court has considered the arguments in that motion.

1

engaging in frivolous litigation.[2] The state court further removed the Jacobs from the docket as petitioners so as to prevent their further interference with the guardianship proceedings. The Jacobs, while receiving notice of that hearing, did not appear. Subsequently, the Jacobs appealed to the Indiana Court of Appeals. While that appeal was pending, Houlihan moved forward with proceedings supplemental to collect the attorney's fees awarded to her by the court. On July 24, 2006, the date of the hearing on the motion for proceedings supplemental, the Jacobs removed the guardianship action to this court claiming this court has jurisdiction under various federal civil rights statutes and that the judge, Houlihan, and her lawyer violated their constitutional rights.

A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. *See, e.g., BIW Deceived v. Local S6,* 132 F.3d 824, 831 (1st Cir.1997). Furthermore, the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action. *See, e.g., Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999).

Unfortunately, for the Jacobs, there are multiple reasons why this cause must be remanded to the Wabash Circuit Court. In the first instance, there are serious questions as to whether the Jacobs may even file a petition for removal since they were not defendants in the state action, did not file their removal petition within 30 days (see 28 U.S.C. §1446(b), and they submitted themselves to the jurisdiction of the state court by filing and prosecuting a counter-petition to its conclusion. Perhaps recognizing this latter point, the Jacobs attempt to disavow that they submitted themselves to the state court's jurisdiction by submitting, along with their petition for removal to

---

[2]According to the state court judge, the actions of the Jacobs caused Jane Houlihan to incur more than four times the attorneys fees that would have been necessary in the action because "many, if not most, of the documents filed by Donald and Michelle were frivolous, unreasonable, groundless and/or in bad faith."

2

this court, a filing from the state court post-hearing entitled "Refusal of Jurisdiction" wherein they state "we expressly disclaim any involvement or participation in this cause of action." Moreover, as counter-petitioners in the guardianship action, the Jacobs are akin to a plaintiff in that action and the right to remove a case from state to federal court is vested exclusively in "the defendant." 28 U.S.C. § 1441(a); *See Russell Corp. v. American Home Assurance Co.,* 264 F.3d 1040, 1048 (11 Cir.2001) ("defendants' right to remove a case is their right alone ···· [t]hey can waive it, exercise it, or bargain it away").

Even setting these defects aside, an action may only be removed to federal court if the federal courts have original jurisdiction, either by federal question or diversity of citizenship, over the state action. 28 U.S.C. §1441(b).  Here, the Jacobs cite that removal jurisdiction is based on a civil rights action under 28 U.S.C. § 1443(1) which permits removal of a civil action "against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." Removal under this section requires satisfaction of a two-pronged test.  First, "it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.' " *Johnson v. Mississippi,* 421 U.S. 213, 219, 95 S.Ct. 1591, 1595 (1975) (quoting *Georgia v. Rachel,* 384 U.S. 780, 792 (1966)); *see also Davis v. Superior Court of California,* 464 F.2d 1272 (9th Cir.1972) (removal of state prosecution to federal court under § 1443 is specific and narrow; claims must relate to statutes explicitly protecting equal racial civil rights). This does not include laws such as 42 U.S.C. § 1983 "that confer equal rights in the sense, vital to our way of life, of bestowing them upon all." *Georgia v. Rachel,* 384 U.S. 780, 792  (1966); *see also Lovely v. Laliberte,* 498 F.2d 1261, 1263 (1st Cir.1974).  Second, it must

3

appear "that the removal petitioner is 'denied or cannot enforce' the specified federal rights 'in the courts of the State.' " *Johnson,* 421 U.S. at 220 (citation omitted). This generally requires a state law or constitutional provision that denies the defendant an opportunity to raise a federal right.

In their removal petition, the Jacobs seek declaratory and injunctive relief against the state court judge, Jane Houlihan, and Houlihan's lawyer for what it claims are violations of their constitutional rights to equal protection and due process. They contend, for instance, that Jane Houlihan and her lawyer committed fraud and forgery in their pleadings in the state court action and that the judge refused to withdraw from the case in the face of "obvious conflicts of interest." The petition for removal fails to allege that there is "a state statute or a constitutional provision that purports to command the state courts to ignore [their] federal rights." *See City of Greenwood v. Peacock,* 384 U.S. 808, 827, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966) (allegations that a litigant "is unable to obtain a fair trial in a particular state court" are insufficient to support removal pursuant to section 1443). For this reason alone, the cause must be remanded.

If the above reasoning is not enough to remand, there is also a potential question as to whether this court has subject matter jurisdiction under the *Rooker-Feldman* doctrine, *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *Dist. of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983). Because application of the *Rooker-Feldman* doctrine can affect this court's jurisdiction, that issue presents a threshold question. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 291-92 (2005) (discussing jurisdictional implications of *Rooker-Feldman); Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 89 (1998) (prohibiting hypothetical jurisdiction); *see also In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d 61, 66 n. 1 (1st Cir.2002).

The *Rooker-Feldman* doctrine provides that lower federal courts "may not sit in direct review

of the decisions of a state tribunal." *Gulla v. North Strabane Township,* 146 F.3d 168, 171 (3rd Cir.1988). Indeed, "the fundamental principle of the *Rooker-Feldman* doctrine [is] that a federal district court may not sit as an appellate court to adjudicate appeals of state court proceedings." *Port Authority PBA v. Port Authority of N.Y. and N.J.,* 973 F.2d 169, 179 (3rd Cir.1992). This prohibition is not limited to decisions by a state's highest court, but also applies to orders issued by lower state courts. *Id*. at178. If a litigant's federal claims are barred under the *Rooker-Feldman* doctrine, the district court is divested of subject matter jurisdiction over those claims. *Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 419 (3rd Cir.2003).

The Supreme Court in *Exxon Mobile Corp.* recently emphasized the narrow scope of the *Rooker-Feldman* doctrine, holding that it is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284; *see also Lance v. Dennis,* --- U.S. ----, ----, 126 S.Ct. 1198, 1201 (2006) (discussing narrowness of *Rooker-Feldman* doctrine). The thrust of the allegations in the present action (at least from what the court can discern in the removal petition) fall within these parameters. The Jacobs are seeking this court to "undo" (i.e. enjoin it from granting guardianship to Houlihan) the actions of the state court in granting guardianship to Jane Houlihan and to require the state court to revisit the issue and reconsider their claims. Although the Jacobs contend that the constitutional violations are separate from the underlying litigation, this is simply not true. Any finding by the undersigned that a constitutional violation occurred in the state court proceeding would, in essence, undermine the state court judgment itself as the two are inextricably intertwined.. "Where federal relief can only be predicated upon a conviction that the

5

state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25 (1987). To the extent that the Jacobs are seeking review of the state court's judgment, their recourse is through the state appellate process not through the federal courts.

Finally, this case may also be subject to the domestic relations exception. The Supreme Court affirmed the existence of the domestic relations exception in *Ankenbrandt v. Richards,* 504 U.S. 689, 693-704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) wherein it held:

> We conclude, therefore, that the domestic relations exception, as articulated by this Court since *Barber,* divests the federal courts of power to issue divorce, alimony, and child custody decrees. Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders.

*Id.* at 703 (referencing *Barber v. Barber,* 62 U.S. 582 (1858)). Although in the instant case none of the parties has asked this Court to "issue divorce, alimony, [or] child custody decrees," several courts have applied the domestic relations exception to guardianship petitions. See *In re Whatley,* 396 F.Supp.2d 50, 58 (D.Mass. 2005); *Mazur v. Woodson,* 932 F.Supp. 144, 148-49 (E.D.Va.1996) (extending the domestic relations exception to an action challenging the validity and regularity of a state-ordered guardianship decree, holding that "guardianship of an adult because of mental illness or incapacity is analogous to child custody situations."). Accordingly, for all of the aforementioned reasons, this cause is REMANDED to the Wabash Circuit Court.

## **CONCLUSION**

Based on the foregoing, this cause is REMANDED to the Wabash Circuit Court.

SO ORDERED.

This 15th day of August 2006.

s/ William C. Lee
United States District Court
Northern District of Indiana
